IN THE CIRCUIT COURT OF CONWAY COUNTY, ARKANSAS
CIVIL DIVISION

GLENDON BRYANT, individually and ）
on behalf of a Class of similarly situated ）
individuals ）
 ）
PLAINTIFFS, ）
 ）
vs. ）  Case No. 15CV-20-103
 ）
 ）
FLYWHEEL ENERGY PRODUCTION, ）
LLC, an Oklahoma limited liability company ）
 ）
DEFENDANTS. ）
 ）

## CLASS ACTION COMPLAINT

Plaintiff Glendon Bryant ("Bryant" or "Plaintiff") for his class action complaint against Flywheel Energy Production ("Flywheel" or "Defendant"), alleges:

## CLASS DEFINITION

1. Plaintiff brings this action individually and on behalf of a proposed Class of similarly situated persons consisting of:

> All persons and entities, including their respective successors and assigns, to whom Flywheel has paid royalties or overriding royalties on natural gas produced from wells located in the State of Arkansas at any time since July 1, 2018, under oil and gas lease agreements or overriding royalty agreements ("Class Royalty Agreements") covering lands located in the State of Arkansas, which require royalties to be paid based upon a specified percentage "of the gross proceeds" of the natural gas sold or used off the leased premises, and in which Flywheel owns holds, or has held some portion of the lessee's interest.
>
> The defined Class excludes: (a) the United States; (b) the Defendants and their respective affiliates, employees, officers, and directors; and (c) any individuals or entities who are currently pursuing royalty underpayment claims against Flywheel in the case styled *Beck et al v. SWN Production (Arkansas) LLC et al*, Case No. 19-cv-429 currently pending the United States District Court for the Eastern District of Arkansas, Central Division.



## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Bryant is a resident and citizen of the State of Arkansas, and has been paid royalties by Flywheel under a lease agreement under which Flywheel owns the lessee's interest. Bryant owns mineral interests in lands and wells located in Conway County, Arkansas.

3. Defendant Flywheel is an Oklahoma limited liability company with its principal place of business at 621 N. Robinson, Suite 300 Oklahoma City, Oklahoma 73102. Flywheel can be served through its Arkansas registered agent, the CT Corporation System, located at 124 West Capitol Ave. Suite 1900 Little Rock, AR 72201.

4. Flywheel has conducted substantial business activities in the State of Arkansas, and derives substantial revenue through its production of natural gas located in the State of Arkansas. Thus, personal jurisdiction comports with Arkansas' long arm statute and due process under the Constitution of the United States.

5. This Court has jurisdiction over Flywheel because the wrongful acts occurred and caused damages to Plaintiffs in Arkansas and all of the natural gas in which royalties are due was produced in the State of Arkansas.

6. Venue is proper in Conway County, Arkansas. The lands and wells covered by the allegations in this Class Action Complaint are exclusively located in the State of Arkansas. Plaintiff Mr. Bryant is a resident of Conway County, Arkansas. Moreover, according to publically available records, in 2019 Flywheel produced approximately 73,000,000 mcf of natural gas from wells located in Conway County, Arkansas.

7. For Bryant, the amount in controversy is less than the sum of $75,000.00.

## GENERAL FACTUAL ALLEGATIONS

8. At various times since December 4, 2018, Flywheel has produced natural gas from wells located in the State of Arkansas which are subject to Class Royalty Agreements, in which Flywheel owns a lessee's interests and has paid royalties to Plaintiffs and members of the defined Class.

9. On January 14, 2010, Glendon K. Bryant and Shirley A. Bryant, husband and wife, as lessors, entered into an oil and gas lease with SEECO, Inc., as lessee ("Bryant Lease"). A copy of the Bryant Lease is attached hereto as Exhibit 1, inclusive of addendums and exhibits.

10. The applicable royalty provision in the Bryant Lease requires the lessee to:

> "pay Lessor for gas and oil of whatsoever nature or kind (with all of its constituents), including but not limited to casinghead gas, coal seam gas, coal bed methane, oil, and all other gaseous or vaporous substances, and all pooling and commingling production, products sold of used off the lease premises or used in the manufacturer of products therefrom, <u>1/5 of the gross proceeds, with no production or transportation fees deducted, for gas and oil used off the lease premises,</u> or in the manufacture of products therefrom, said payments to be made monthly."

(Ex. 1, p. 9) (emphasis added).

11. In addition to Mr. Bryant, hundreds of other members of the defined Class have Royalty Agreements which contain a provision requiring royalties to be paid on the gross proceeds received from the sale of natural gas.

12. Effective on or about July 1, 2018, Flywheel acquired the lessee's interest in the Bryant Lease and the Class Royalty Agreements, and has had a lessee's interest in the Bryant Lease and the Class Royalty Agreements at all times since July 1, 2018.

13. Under the applicable royalty provision in the Bryant Lease and the Class Royalty Agreements, Flywheel has an obligation to pay royalties to the Plaintiff and the Class based upon

3

the gross proceeds received by Flywheel on the sale of natural gas to an unaffiliated third-party, without the deduction of post-productions costs.

14. Since July 1, 2018, Flywheel has consistently breached its royalty payment obligations to the Plaintiff and the Class members under the Class Royalty Agreements, in that Flywheel has not paid royalties based upon the gross proceeds received on the sale of natural gas to an unaffiliated third-party, without deduction of post-production costs. Instead, Flywheel has consistently deducted various post-production costs in the calculation of royalties paid to the members of the defined Class of royalty owners.

15. Because Flywheel has calculated and paid royalties to Bryant and the Class Members under the Class Royalty Agreements in the manner referenced above, Flywheel has breached its royalty payment obligations to Mr. Bryant and the Class members under the Class Royalty Agreements.

16. As a direct result of Flywheel's breaches of the Class Royalty Agreements, as described above, Mr. Bryant and the Class members have sustained substantial damages.

## CLASS ALLEGATIONS

17. The claims of the Plaintiffs and the Class members against Flywheel satisfy each of the six requirements for class certification set forth in A.R.C.P. 23.

18. The proposed Class is so numerous that joinder of all Class members is impracticable.

19. There are questions of law and fact which are commons to the claims of the Class, including:

> A. Whether Flywheel has a common royalty payment obligation to the named Plaintiff and the Class members under the Class Royalty Agreements to pay them royalties based upon the sales gross proceeds received on the sale of

      natural gas to an unaffiliated third-party, without deduction of post-production costs;

      B. Whether Flywheel breached its royalty payment obligations to the Plaintiff and the Class under the Class Royalty Agreements by deducting post-production costs from the gross proceeds in the calculation and payment of royalties to Bryant and the Class members; and

20. The Plaintiff's claims are typical of the claims of the Class members.

21. Plaintiff will fairly and adequately protect the interests of the Class.

22. The questions of law or fact common to the Class members predominate over any questions affecting only individuals members of the Class.

23. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT I – BREACH OF CONTRACT

24. The allegations contained in Paragraphs 1 through 23, inclusive, are restated and incorporated by reference herein.

25. Flywheel is obligated to pay royalties to Bryant and the other Class members in accordance with the royalty provision set forth in the Class Royalty Agreements.

26. Flywheel has breached the Class Royalty Agreements by failing to pay royalties to Bryant and the Class members based upon the gross proceeds received by Flywheel on the sale of natural gas to an unaffiliated third party which came from wells which are subject to the Class Royalty Agreements without deduction of post-production costs.

27. As a direct result of Flywheel's breaches of the Class Royalty Agreements, the Plaintiff and Class members have suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. An Order that the claims asserted herein by Bryant, on behalf of the defined Class, be certified as a class action pursuant to A.R.C.P. 23, that Bryant be appointed as Class Representative, and that attorneys George Barton and Stacy Burrows be appointed as Class Counsel;

B. A judgment in favor of Plaintiffs and the Class members on their claim for Flywheel's breach of the Class Royalty Agreements at issue, in an amount which equals the full amount of Flywheel's royalty underpayments through the date of final judgment, plus applicable prejudgment interest;

C. Such other relief in law and equity, including, without limitation, costs incurred by Plaintiffs, pre-judgment and post-judgment interest pursuant to Arkansas law, and any other relief to which Plaintiffs show themselves to be entitled.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

DATED: August 27, 2020

Respectfully submitted,

DAVIDSON LAW FIRM
Post Office Box 1300
Little Rock, Arkansas 72203
Phone: 501-374-9977
Facsimile: 501-374-5917
Email: slg@dlf-ar.com
       alisonh@dlf-ar.com

By: _____
Stephen L. Gershner 78059

***ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS***

and

George A. Barton, Mo. Bar No. 26249
Stacy A. Burrows, Ks. Bar No. 21310
Law Offices of George A. Barton, P.C.
7227 Metcalf Ave., Ste. 301
Overland Park, KS 66204
Phone: (816) 300-6250
Fax: (816) 300-6259
Email: gab@georgebartonlaw.com

*Application for Admission Pro Hac Vice to be filed*

7

Form No. 1102

## OIL AND GAS LEASE
(Paid-up Lease—No Delay Rentals)

THIS AGREEMENT, made and entered into this 14th day of January, 20 10, by and between Glendon K. Bryant and Shirley A. Bryant, husband and wife,

of 3681 Highway 92, Center Ridge, AR 72027

hereinafter called Lessor (whether one or more) and SEECO, Inc., 2350 North Sam Houston Parkway East, Suite 125, Houston, Texas 77032, hereinafter called Lessee.

WITNESSETH: Lessor for and in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration in hand paid, receipt of which is hereby acknowledged, and of the agreements of lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, including, but not as a limitation, casinghead gas, casinghead gasoline, gas-condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state, together with the right to construct and maintain pipe lines, telephone and electric lines, tanks, power stations, ponds, roadways, plants, equipment and structures thereon to produce, save and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine, and other fluids into the subsurface strata, said lands being situated in the:

County of Conway, State of Arkansas, and being described as follows, to-wit:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION

SEE ATTACHED EXHIBIT "B" FOR SPECIAL LEASE PREVISION

of Section 35, Township 9 North, Range 15 West, it being the purpose and intent of lessor to lease, and lessor does hereby lease, all of the lands ... owned by lessor ... the lands above described or which lie in the section or sections herein specified ... completely and accurately described, together with any accretions thereto which may have formed, may now be forming or may hereafter form. For all purposes of this lease, said land shall be deemed to contain _____ acres.

Subject to the other provisions herein contained, this lease shall remain in force for a term of Five (5) years from this date

(herein called "primary term") and as long thereafter as oil and gas, or either of them, is produced from the above described land or drilling operations are continuously prosecuted as hereinafter provided. "Drilling Operations" includes operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole, or other operations conducted in an effort to obtain or re-establish production of oil or gas; and drilling operations shall be considered to be "continuously prosecuted" if not more than 180 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole. If, at the expiration of the primary term of this lease, oil or gas is not being produced from the above described land but lessee is then engaged in drilling operations, this lease shall continue in force so long as drilling operations are continuously prosecuted; and if production of oil and gas results from any such drilling operations, this lease shall continue in force so long as oil or gas shall be produced. If, after the expiration of the primary term of this lease, production from the above described land should cease, this lease shall not terminate if lessee is then prosecuting drilling operations, or within 180 days after each such cessation of production commences drilling operations, and this lease shall remain in force so long as such operations are continuously prosecuted, and if production results therefrom, then as long thereafter as oil or gas is produced from the described land

In consideration of the premises, lessee covenants and agrees:

1. To deliver, free of cost, to lessor at the wells, or to the credit of lessor in the pipeline to which the wells may be connected, the equal one-fifth (1/5) part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or, at lessee's option, to pay to lessor for such one-fifth (1/5) royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease.

2. Lessee shall pay Lessor one-fifth of the proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas. ~~In calculating the proceeds derived from the sale of gas produced, saved and sold by Lessee, Lessee shall be entitled to deduct all reasonable gathering, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas~~

3. The consideration paid to lessor for this lease includes consideration in lieu of delay rental provisions and the rights and obligations of the parties hereunder shall be the same as if this lease contained provisions for the payment of periodic delay rentals throughout the primary term hereof and each such delay rental had been timely paid and accepted by lessor.

4. If a well capable of producing gas or gas-condensate in paying quantities located on the lease premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease will continue in force during ~~all of the time periods~~ while such well is so shut in.

116



EXHIBIT A

Form No. 1102

failure to comply therewith; and this lease shall be extended while and so long as lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while lessee is so prevented shall not be counted against lessee, anything in this lease to the contrary notwithstanding.

13. This lease and all provisions thereof shall be applicable to, binding upon and enforceable by the parties thereto and their respective successors and assigns. Reference herein to lessor and lessee shall include reference to their respective successors and assigns, it being expressly agreed that lessor and lessee shall have the right to assign. Should any one or more of the parties named above as lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing the same.

14. Each wife/husband above named hereby joins in the execution and delivery of this lease for the purpose of conveying, releasing and relinquishing unto lessee, for the purpose and consideration aforesaid, all of his/her right, title, interest and estate in said land, including any rights of dower/curtesy and homestead which he/she may have therein.

IN WITNESS WHEREOF, this lease is executed as of the day and year first above written.

_____   _____
Lessor: Glendon K. Bryant          Lessor: Shirley A. Bryant

_____   _____
Lessor:                            Lessor:

---

STATE OF __Arkansas__  }
COUNTY OF __Conway__   } §   (Individual or Joint Acknowledgment—Arkansas)

On this __16__ day of __Feb.__, 20__10__, before me the undersigned Notary Public in and for said County and State personally appeared Glendon K. Bryant and Shirley A. Bryant, husband and wife, known to me to be the person(s) whose name(s) are subscribed to the foregoing instrument and acknowledged that they executed the same as their free and voluntary act and deed for the purposes and consideration therein mentioned and set forth.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

(STAMP/SEAL)

My Commission Expires:
__1-5-16__

_____
Notary Public (Lesley A. Lentz)

---

STATE OF _____  }
COUNTY OF _____  } §   (Individual or Joint Acknowledgment—Arkansas)

On this _____ day of _____, 20____, before me the undersigned Notary Public in and for said County and State personally appeared _____ known to me to be the person(s) whose name(s) _____ subscribed to the foregoing instrument and acknowledged that _____ executed the same as _____ free and voluntary act and deed for the purposes and consideration therein mentioned and set forth.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

(STAMP/SEAL)

My Commission Expires:

112

_____
Notary Public

Form No. 1102

STATE OF _____ }
COUNTY OF _____ } §     (Corporate Acknowledgment—Arkansas)

Before me, the undersigned, a Notary Public in and for said County and State on this _____ day of _____ 20\_\_\_\_, personally appeared _____ to me known to be the identical person who subscribed the name of the maker thereof to the foregoing instrument as its _____ and acknowledged to me that he executed the same as his free and voluntary act and deed and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.

Given my hand and seal the day and year last above written.

(STAMP/SEAL)

My Commission Expires:

_____     _____
                                                                                                Notary Public

THIS INSTRUMENT PREPARED BY:

Stephen L. Vaughan/mnf
Schonwald Land, Inc.
9434 Cedar Lake Avenue
Oklahoma City, Oklahoma 73114
(405) 848-5186

118

EXHIBIT "A"
(Page 1 of 1 page)

Attached to a made part of a certain Oil and Gas Lease dated January 14, 2010, by and between Glendon K. Bryant and Shirley A. Bryant, husband and wife, as Lessors and SEECO, Inc., as Lessees.

THE DESCRIPTIONS OF THE LANDS COVERED BY THIS LEASE ARE:

**TOWNSHIP 9 NORTH, RANGE 15 WEST**

Tract 1: SECTION 35: The Northeast Quarter of the Southeast Quarter (NE4 SE4) of Section 35, containing 40.00 acres, more or less (owning 50% of mineral rights, net 20 acres).
ALSO,

Tract 2: Fractional part of the Northwest Quarter of the Southeast Quarter (Frl. NW4 SE4) of Section 35, described as follows: Beginning at the Northeast Corner of the above mentioned tract of land running thence West 300 yards, thence South to South line of said tract; thence East to Southeast corner of said tract, thence North to the Northeast Corner of said tract and the point of beginning, containing 27.00 acres, more or less.
LESS AND EXCEPT:
Part of the NW4 of the SE4 of Section 35, Township 9 North, Range 15 West, commencing at the SE corner of the NW4 of the SE4 of Section 35, thence North 40.0 feet to the right of way of State Hwy #92, point of beginning, thence North 527.68 feet, thence N 89 degrees 44' West 330.20 feet; thence South 527.68 feet to the North right of way State Hwy #92, thence S 89 degrees 44' East along said right of way 330.20 feet to the point of beginning, containing 4.00 acres, more or less, conveying in the aggregate 55.98 ~~63.00~~ acres, more or less. All of the above described lands being in Township Nine (9) North, Range Fifteen (15) West, Conway County Arkansas.
LESS AND EXCEPT:
Part of the Northwest Quarter of the Southeast Quarter (NW4 SE4) Section 35, Township 9 North, Range 15 West, described as follows: Beginning at the SW Corner of the NW4 SE4, thence South 89 degrees 44' East 413.0 feet for a point of beginning, thence North 496.5 feet, thence East 576.8 feet, thence South 555.8 feet, thence North 89 degrees 44' West 576.8 feet to the point of beginning, containing 7.12 acres, more or less, (owning 100% of mineral rights, net 15.88 acres).

Agreement is made for a lease term of 5 years. Lessor agrees to pay Lessee $1,250.00 per acre to lease mineral rights as noted.

Signed for Identification:

_____        _____
Glendon K. Bryant                     Shirley A. Bryant

119

  

EXHIBIT "B"
(Page 1 of 5 Pages)

Attached to and made a part of that certain Oil and Gas Lease dated January 14, 2010, by and between <u>Glendon K. Bryant and Shirley A. Bryant, husband and wife</u>, hereinafter referred to as Lessor and <u>SEECO, Inc.</u>, as Lessee.

1. <u>Scope of Addendum</u>:
The terms, agreements, conditions and provisions of the Addendum shall govern the relationship as between the Lessor and the Lessee notwithstanding any contrary provision of the Lease.

2. <u>Limitation on Means of Extraction</u>.
Extraction of oil or gas from the lands which are the subject matter of the Lease may be accomplished only through a borehole. No strip mining or other extraction method which substantially destroys the surface of the leased lands may be employed.

3. <u>Hydrocarbons</u>.
For purposes of the Lease, "hydrocarbons" specifically exclude coal, lignite and uranium; <u>provided that the Lease shall include methane gas found in coal formations.</u>

4. <u>Entry on Leased Land</u>.
    4.1 <u>Entry for Drilling Operations</u>:
Prior to the commencement of any drilling operations upon the leased land, the Lessee shall confer with the Lessor as to the Lessee's desired means of ingress and egress to the drill site(s) from public right of way, and such reasonable means of access will be subject to Lessor's prior approval, which approval shall not be unreasonably withheld. Lessee's agents, employees and contractors shall thereafter be limited to ingress and egress to the drill site by way of such approved means of access. The approval by Lessor of the location of any means of access shall not constitute a waiver of compensation for use of the property within the means of access.

    4.2 <u>Roadways to be Constructed</u>.
Any roadway to be constructed from public right of way to any drill site on the leased land shall be constructed in a fashion and of such materials as to support the equipment traversing such means of access, and to avoid any damages to the surrounding surface area of the leased lands. Roadbeds to be constructed with a minimum of a 3" gravel base after compaction. Cattle guards and gates will be installed on constructed roadways at entry to leased lands.

SIGNED FOR IDENTIFICATION

_____            _____
Glendon K. Bryant                              Shirley A. Bryant

120

EXHIBIT "B"
(Page 2 of 5 Pages)

Attached to and made a part of that certain Oil and Gas Lease dated January 14, 2010, by and between **Glendon K. Bryant and Shirley A. Bryant, husband and wife,** hereinafter referred to as Lessor and **SEECO, Inc.**, as Lessee.

5. Pipelines:
    5.1 Method of Installation.
    All pipelines installed upon the leased land shall be buried to a depth of at least 40 inches, and shall be installed utilizing a double ditching method such that the top soil removed during excavation in re-installed as the final layer when the pipeline is installed.

6. Utility Installations.
All utility lines required for the operation of any well shall be installed within the area approved by the Lessor for the construction of the means of access to the well site.

7. Shut-In-Wells:
Notwithstanding any contrary provision of the Lease, no shut-in-well shall be deemed to be a well upon the leased land producing gas in paying quantities for more than three (3) consecutive years from the date the well is shut-in. Further, notwithstanding the provisions of the Lease, the annual royalty which shall be paid for a shut-in well shall be equal to $25.00 per year per mineral acre for acreage covered by the Lease.

8. Use of Water.
Notwithstanding any contrary provision of the Lease, the Lessee shall have no right to use of any surface water on the leased land; any water from Lessor's existing wells, or to drill water wells on the leased land without written consent of Lessor and said consent will not be unreasonably withheld.

9. Operations on Leased Land:
    9.1 Fencing on Well Site.
    The Lessee shall build and maintain fencing around the well site and all adjacent areas utilized by the Lessee in connection with any production operations, except that Lessee will not be required to fence the access route to the well site.

SIGNED FOR IDENTIFICATION

_____     _____
Glendon K. Bryant                         Shirley A. Bryant

/21/

EXHIBIT "B"
(Page 3 of 5 Pages)

Attached to and made a part of that certain Oil and Gas Lease dated January 14, 2010, by and between **Glendon K. Bryant and Shirley A. Bryant, husband and wife,** hereinafter referred to as Lessor and **SEECO, Inc.**, as Lessee.

9.2 Damages.
Lessee shall repair, as nearly as practicable, all damages of any kind or character to the leased lands and improvements thereon which might be caused by the Lessee, its agents, servants, employees, sub-contractors, successors and assigns, and Lessee shall pay all damages resulting from operations under the Lease, including, without limitation, damages to any personal property, improvements, livestock, pastures, fences and fencing, ditches, roadways, and crops upon the leased land. For purposes hereof, trees shall be deemed growing crops.

9.3 Restoration of Surface.
Whenever practical, Lessee will restore the surface of each well site on the lease lands after completion of all wells drilled from each such well site, as nearly as practicable to the same condition as existed prior to commencement of operations upon the leased lands.

9.4 Environmental Matters.
Lessee shall use a reasonable degree of care and all reasonable safeguards to prevent, the contamination or pollution of the soil, sub-soil, surface waters, groundwater, sediment, surface and sub-surface strata, ambient air, or any other environmental medium in, on, or under the leased lands, or any adjacent lands, whether or not owned by the Lessor, by any waster, pollutant or contaminant. Lessee shall not bring, discharge, or permit to remain, on the leased lands, any explosives, toxic materials or substances regulated as hazardous wastes, substances or materials or toxic substances or materials under and Federal, State or Local law, regulation or order (collectively, "Hazardous Materials"), except those products, in those quantities, normally utilized in connection with oil and gas exploration and production activities. Lessee shall clean up, remove, remedy and repair any release or contamination to the leased lands by Hazardous Materials caused by its operations upon the leased lands, or any adjoining lands, and shall indemnify and save the Lessor harmless of and from any and all liability, cost, expense or claim of any nature of kind whatsoever, arising out of the release or discharge of any such Hazardous Materials. The provisions of the Section shall survive the termination or expiration of the Lease.

SIGNED FOR IDENTIFICATION

_____                           _____
Glendon K. Bryant                                    Shirley A. Bryant

122

EXHIBIT "B"
(Page 4 of 5 Pages)

Attached to and made a part of that certain Oil and Gas Lease dated January 14, 2010, by and between Glendon K. Bryant and Shirley A. Bryant, husband and wife, hereinafter referred to as Lessor and SEECO, Inc., as Lessee.

9.5 Insurance and Indemnity.
The Lessee shall indemnify and hold the Lessor, the Lessor's heirs, successors, personal representatives and assigns, harmless of and from all claims and suits for damages arising out of the Lessee's operations or entry upon the leased lands, including, without limitation, claims for damages arising out of personal injury or death to any person, property damage, including environmental damages, and all other claims or damages, including exemplary damages, of any nature of kind whatsoever, this indemnity to include any attorney's fees or other costs or expenses reasonably incurred by the Lessor in defending or investigating any such claim or action.

9.6 Lack of Drilling Equipment.
This lease cannot be extended for lack of drilling equipment.

9.7 Drilling Limitation.
No well to be drilled on leased premises within 300 feet of any house or structure located on the said premises as of the date of this lease without the written consent of the Lessor.

THE BODY OF THE ATTACHED OIL AND GAS LEASE IS HEREBY AMENDED AS FOLLOWS:

Paragraph 4, is hereby amended to read as follows:

To pay Lessor for gas and oil of whatsoever nature or kind (with all of its constituents), including but not limited to casing head gas, coal seam gas, coal bed methane, oil, and all other gaseous or vaporous substances, and all pooling and commingling production, products sold or used off the lease premises or used in the manufacture of products therefrom, 1/5 of the gross proceeds, with no production or transportation fees deducted, for the gas and oil sold, used off the premises, or in the manufacture of products therefrom, said payments to be made monthly.

SIGNED FOR IDENTIFICATION

_____                    _____
Glendon K. Bryant                              Shirley A. Bryant

Mailing Address
3681 Highway 92
Center Ridge, AR 72027

123

EXHIBIT "B"
(Page 5 of 5 Pages)

Attached to and made a part of that certain Oil and Gas Lease dated January 14, 2010, by and between <u>Glendon K. Bryant and Shirley A. Bryant, husband and wife, husband and wife,</u> hereinafter referred to as Lessor and <u>SEECO, Inc.</u>, as Lessee.

10. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of the Lease shall continue and remain in full force and effect for all purposes.

11. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules, or regulations

12. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee, all right of dower, curtsey and homestead in and to the lands covered hereby for the purpose of this Lease.

13. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

IN WITNESS WHEREOF, this Lease is executed as of date first set out hereinabove.

SIGNED FOR IDENTIFICATION

_____          _____
Glendon K. Bryant                                       Shirley A. Bryant

124

February 9, 2010

Glendon K. Bryant
3681 Highway 92
Center Ridge, AR 72027

If customers bank draft dated January 14, 2010 drawn on Coppermark Bank P.O. Box 25676 Oklahoma City, OK 73125-0676, Prospect Name & No. Brownie Prospect #022-03-03 is voided, this attached lease is voided also.

Sincerely,

Glendon K. Bryant

Book-Page: 195-0116
CERTIFICATE OF RECORD
Filed: 2/16/2010 3:59:30 PM
Pages: 10 (0116-0125)
Official Records of
State of Arkansas
Conway County
Carolyn Gadberry
Circuit Clerk & Recorder

By: [signature] D.C.