**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| **DARRELL OLIGER AND CAROL OLIGER, CO-TRUSTEES OF THE DARRELL AND CAROL OLIGER REVOCABLE TRUST DATED JUNE 19, 2007, PULOMA PROPERTIES, LLC, and LGTD INVESTMENTS, LLC,** Individually and on behalf of all others similarly situated | **PLAINTIFFS** |

**v.**                     **Case No.: 4:20-cv-01146-LPR**

**FLYWHEEL ENERGY PRODUCTION,
LLC**                                                    **DEFENDANT**

**Consolidated With**

**GLENDON BRYANT, Individually and on
behalf of a class of similarly situated
individuals**                                          **PLAINTIFF**

**v.**                     **Case No.: 4:20-cv-01147-LPR**

**FLYWHEEL ENERGY PRODUCTION,
LLC**                                                    **DEFENDANT**

## <u>ORDER</u>

These consolidated cases are potential class action lawsuits challenging Defendant Flywheel Energy Production, LLC's ("Flywheel") practice of deducting expenses from Plaintiffs' oil and gas lease royalty payments. No class certification motion has been filed at this time. Thus, no class has been certified yet.

Under Federal Rule of Civil Procedure 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Because two (competing) sets of attorneys have applied for interim appointment, the

Court is currently tasked with determining which set is "best able to represent the interests of" the potential class.[1]

The Oliger Plaintiffs have asked that their lawyers in the instant *Oliger* lawsuit, the Thrash Law Firm and the Morgan Law firm ("Thrash/Morgan"), be appointed interim class counsel. Plaintiff Glendon Bryant made the same request with respect to his attorneys, George A. Barton and Stacy A. Burrows of the law firm Barton and Burrows, LLC ("Barton and Burrows"). However, as discussed in greater detail below, Mr. Bryant no longer wishes to be represented by Barton and Burrows. Currently, there is no person identified as wanting to be a named plaintiff and wanting Barton and Burrows to be lead counsel.

The Court finds that Thrash/Morgan is best able to represent the interests of the potential class. Therefore, the Oliger Plaintiffs' Motion to Appoint Interim Class Counsel is GRANTED, and Mr. Bryant's Motion to Appoint Interim Class Counsel is DENIED.[2]

## I. BACKGROUND

These consolidated cases are merely two in a bundle of federal lawsuits challenging the royalty-payment practices of energy companies such as Flywheel. The claims, parties, and attorneys in all of these lawsuits overlap to varying degrees. To get a clear picture of which potential class counsel is "best able to represent the interests of the class" it is necessary to lay out the facts in fairly significant detail.[3]

---

[1] Fed. R. Civ. P. 23(g)(2).

[2] *Oliger Case Docket* (Doc. 45) (Oliger Motion); *Oliger Case Docket* (Doc. 48) (Bryant Motion). The Oliger Plaintiffs' Motion to Supplement Record of Rule 23(g)(3) Conference (Doc. 52) is GRANTED. Mr. Bryant's Motion for Leave to file an Amended Class Action Complaint and to Substitute Putative Class Representative (Doc. 57) is DENIED. As discussed *infra* Section I.D., the new class representative proposed in the Motion for Leave has now gotten cold feet.

[3] Fed. R. Civ. P. 23(g)(2).

The history of these cases is unusually complex.  In Section I.A., the Court provides background for the *Oliger* lawsuit.  The *Oliger* case's story dates back several years and heavily involves both Thrash/Morgan and Barton and Burrows.  In Section I.B., the Court provides similar background information for the *Bryant* lawsuit, including the collapse of Mr. Bryant's attorney-client relationship with Barton and Burrows.  In Section I.C., the Court recounts the first hearing it held to resolve the instant Motions and a game-changing voicemail from Mr. Bryant to Thrash/Morgan the morning after that hearing.  In Section I.D., the Court tells the story of Harrol Barnes, Barton and Burrows desired replacement for Mr. Bryant as the named Plaintiff and class representative.

## A.  The Backstory of the *Oliger* Case

While the Oliger Plaintiffs seek to have Thrash/Morgan appointed in the instant *Oliger* lawsuit, Darrell and Carol Oliger are also currently represented by Barton and Burrows in another federal case in this district—*Beck v. SWN Production (Arkansas) LLC*.[4]  How this occurred is important to explain.

The Oligers' relationship with Barton and Burrows goes back several years.  On August 6, 2015, Mr. Oliger entered into an attorney-client agreement with Barton and Burrows.[5]  That agreement stated that Barton and Burrows would represent Mr. Oliger in a lawsuit against SEECO, Inc. (which later becomes Flywheel) for damages based on SEECO's "breach of its royalty payment obligations" to Mr. Oliger "under a lease agreement between" Mr. Oliger and SEECO.

---

[4] No. 4:19-cv-00429-BSM (E.D. Ark.) [hereinafter *Beck Case Docket*].

[5] A copy of the August 6, 2015 attorney-client agreement was provided to the Court during the December 17, 2021 hearing on the instant Motions.  The attorney-client agreement is between Mr. Oliger and the Law Offices of George A. Barton, P.C.  Barton and Burrows is the successor to the Law Offices of George A. Barton.  The law firm changed its name after Stacy Burrows became a partner in the firm.

A month-and-a-half later, on September 23, 2015, Mr. Oliger was named as a plaintiff in *O'Neal v. SWN Production LLC*.[6]   The gravamen of the *O'Neal* Plaintiffs' claims was that the Defendants in that case were artificially inflating, or outright fabricating, costs in order to lower royalty payments.   On November 17, 2015, the presiding court stayed *O'Neal* pending resolution of an Eighth Circuit appeal in a similar case.[7]   That stay would remain in effect until January 2020, when Judge Miller consolidated *O'Neal* and *Bell v. Desoto Gathering Company, LLC* into a single action with *Beck*.[8]   In the meantime, Mr. Oliger began independently exploring the "gross proceeds" issue directly with Flywheel in June of 2019.[9]   Apparently, Thrash/Morgan (specifically, the Morgan Law Firm) and the Arkansas Oil and Gas Commission were looking into Flywheel's practices around this same time.[10]

On March 30, 2020, an amended (and currently operative) Complaint was filed in *Beck* to reflect the consolidation with *O'Neal* and *Bell* and to add Flywheel as a defendant.[11]   That Complaint expressly identifies Mr. Oliger as holding a "[l]ease with SEECO, Inc. (at this point, Flywheel) which contains a prohibits deduction type royalty provision."[12]   Mr. Oliger's "relevant [l]eases" were attached to that *Beck* Complaint, with the SEECO/Flywheel lease attached there

---

[6] No. 4:15-cv-00629-BSM (E.D. Ark.) [hereinafter *O'Neal Case Docket*]. The *O'Neal* case was filed in Arkansas state court on September 23, 2015. The *O'Neal* Defendants removed the case to federal court on October 9, 2015.

[7] *O'Neal Case Docket* (Doc. 25). Judge Wilson was presiding over *O'Neal* at this time.

[8] Judge Wilson recused from the *O'Neal* case on February 24, 2016, and the case was transferred to Judge Miller. *O'Neal Case Docket* (Docs. 30–31). Judge Miller lifted the stay in *O'Neal* on January 10, 2020. *O'Neal Case Docket* (Doc. 37). *O'Neal*, *Bell*, and *Beck* were consolidated on January 16, 2020. *Beck Case Docket* (Doc. 35).

[9] Thrash/Morgan presented a timeline during the August 25, 2021 hearing. That timeline suggests that Mr. Oliger sent Flywheel a letter concerning Flywheel's royalty deductions on June 7, 2019.

[10] Thrash/Morgan's timeline suggests that on August 7, 2019, the Oil and Gas Commission sent a letter to Flywheel. On August 22, 2019, Flywheel replied to the Oil and Gas Commission. On August 30, 2019, the Oil and Gas Commission sent a letter to Mr. Oliger. On September 18, 2019, the Morgan Law Firm sent a letter to Flywheel. The Court does not know the contents of these letters. It is not clear if Mr. Oliger, the Morgan Law Firm, and the Oil and Gas Commission were operating on parallel tracks, or if there was already overlap at this time.

[11] *Beck Case Docket* (Doc. 51).

[12] *Id.* ¶ 124 (parenthetical added).

being the exact same "gross proceeds" lease he seeks to enforce against Flywheel in the instant *Oliger* lawsuit.[13]  In its Answer to the operative *Beck* Complaint, Flywheel raised Arkansas Code Annotated section 15-72-305 as an affirmative defense.[14]  That is the same statute at issue in the instant *Oliger* lawsuit.[15]

Mr. Oliger testified that he does not believe that his 2015 agreement with Barton and Burrows covers his "gross proceeds" claims against Flywheel.[16]  Mr. Oliger testified that when the *Beck* Complaint was amended to add the "gross proceeds" claims against Flywheel, he told Barton and Burrows attorney Seth Jones that he wanted out of the *Beck* case if the amendment meant that Mr. Oliger could not pursue his "gross proceeds" claim against Flywheel.[17]  Mr. Oliger has not been dismissed from *Beck* and has not officially terminated his attorney-client relationship with

---

[13] *Compare Beck Case Docket* (Doc. 51-97) at 16–21, *with Oliger Case Docket* (Doc. 34) at 30–35.

[14] *Beck Case Docket* (Doc. 72) (Flywheel Energy Production adopting and incorporating SWN Production's Answer); *id.* (Doc. 60) at 72–73 (SWN Production's Answer pleading "all relevant provisions of Ark. Code § 15-72-305 . . .").

[15] *Oliger Case Docket* (Doc. 34) ¶ 2 (Mr. Oliger's operative Complaint "primarily seek[ing] this Court's final determination" that Ark. Code Ann. § 15-72-305(a)(8)(C) preserves "the Plaintiffs' and the Class's full contractual rights" and "[a]lternatively" seeking a determination that Ark. Code Ann. § 15-72-305(a)(3) prevents Flywheel from deducting certain post-production expenses). This apparent overlap has led to a fierce dispute between Barton and Burrows and Thrash/Morgan over whether the Oligers' claims are already being prosecuted in *Beck*. Thrash/Morgan has determined that the claims in this case are unique from the claims asserted in *Beck*. Thrash/Morgan says that conclusion is correct because the Court "denied Flywheel's Motion to Dismiss because the claims in the *Oliger* [a]ction were not included in the individual claims in the *Beck* [a]ction." *Oliger Case Docket* (Doc. 46) at 3. This is news to the Court.

The Oliger Plaintiffs have filed a total of four Complaints in the instant *Oliger* lawsuit. (Docs. 2, 3, 14, 34). In response to the Second Amended Complaint, Flywheel filed a Motion to Dismiss or for Stay of Proceedings, arguing in part that Mr. Oliger's claims were already being litigated in *Beck*. *Oliger Case Docket* (Docs. 18–19). Before that Motion was resolved, the Oliger Plaintiffs requested leave to file a Third Amended Complaint. *Oliger Case Docket* (Doc. 31). The Court granted that request and gave Flywheel the opportunity to supplement its original Motion if necessary. *Oliger Case Docket* (Doc. 33). The Third Amended Complaint added two Plaintiffs who are not parties in *Beck*. *Oliger Case Docket* (Doc. 34). Flywheel then withdrew its Motion. (Doc. 36). Thus, the Court has not ruled on the effect of Mr. Oliger's status as a party in *Beck*. It has not been asked to do so now, so it will not.

[16] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 59–62.

[17] *Id.* at 62. It is not entirely clear what Mr. Oliger meant by this statement. One way to interpret it is that Mr. Oliger was concerned the amended *Beck* Complaint did not encapsulate his "gross proceeds" claims against Flywheel at all. Another way (and, in the Court's view, the more accurate way) to interpret it is that Mr. Oliger was concerned because he had already begun exploring a "gross proceeds" claim against Flywheel outside of the *Beck* litigation. *See supra* note 9 and accompanying text.

Barton and Burrows in *Beck*.[18]   Thrash/Morgan has not entered an appearance on behalf of Mr. Oliger in *Beck*.

According to the Thrash/Morgan timeline, *see supra* note 9, Mr. Oliger and Thrash/Morgan did not cross paths until May 21, 2020, when Mr. Oliger met with the Morgan Law Firm.   Mr. Oliger testified that he initiated contact with Nathan Morgan of the Morgan Law Firm.[19]   Mr. Oliger said that he did not tell Mr. Morgan that he was being represented on his "gross proceeds" claim against Flywheel (because Mr. Oliger does not consider himself to be represented on that claim) but that Mr. Morgan did know that Mr. Oliger was already represented on his "other" claims in *Beck*.[20]   Mr. Oliger does not know whether Mr. Morgan reviewed the *Beck* Complaint "to see what claims [Mr. Oliger] had asserted in that matter" prior to agreeing to represent Mr. Oliger.[21]   Per the Thrash/Morgan timeline, the Morgan Law Firm began reviewing the Oligers' lease and investigating their claims on May 22, 2020.   The Oligers engaged the Morgan Law Firm for the *Oliger* lawsuit on May 26, 2020.   The Morgan Law Firm associated with the Thrash Law Firm that same day.   As part of its pre-Complaint investigation, Thrash/Morgan stated that it reviewed the *Beck* docket.[22]   On August 24, 2020, Mr. Oliger filed his instant lawsuit in Arkansas state court, and Flywheel removed the case to federal court on September 25, 2020.[23]

---

[18] Barton and Burrows acknowledged that Mr. Oliger being represented by two different sets of attorneys in similar lawsuits, coupled with both sets of attorneys competing for the interim class counsel designation in the case at bar, has essentially zombified the attorney-client relationship with Mr. Oliger in *Beck*.   Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 129–30.   Barton and Burrows offered to officially withdraw as Mr. Oliger's counsel in *Beck*. *Id.* at 130.   At the time of this Order, Barton and Burrows is still on record as Mr. Oliger's attorney in *Beck*.

[19] *Id.* at 68.

[20] *Id.* at 69.

[21] *Id.*

[22] Aug. 25, 2021 Hr'g Tr. at 6.

[23] *Oliger Case Docket* (Doc. 1).

In December 2020, Flywheel and Barton and Burrows notified Judge Miller that a settlement in principle had been reached in *Beck*.[24]  This potential settlement in *Beck* has created significant issues between Mr. Oliger and Barton and Burrows.   The terms of the settlement agreement are not confidential, and a copy has been shared with the Court.   The relevant portions of the agreement state:

> **"Release Date"** means 11:59 p.m. in Little Rock, Arkansas, on the latest date when each and every Plaintiff has signed [the settlement agreement] . . . .   Released Claims which accrued prior to the Release Date shall be released even though the underlying Royalty Payment . . . may not have occurred until a later date.

> **"Released Claims"** means and includes all claims . . . arising in whole or in part at any time up to and including the Release Date from or in connection with acts or omissions of any of the Released Parties . . . which were asserted, made, or described, or that could have been asserted, made, or described based on facts alleged or described in the Plaintiffs' Complaint . . . .   Also without limiting the foregoing, "Released Claims" means and includes all claims arising in whole or part at any time up to and including the Release Date for greater, additional, or unpaid amounts of royalty (or damages measured by royalty, including royalty taken in kind) . . . .

> . . .

> As a material part of this Settlement Agreement and as further consideration for this Settlement Agreement, Plaintiffs agree that the manner in which Flywheel operates, as of the Release Date of this Settlement Agreement . . . shall be acceptable to Plaintiffs from and after the Release Date of this Agreement.

> . . .

> Notwithstanding the foregoing . . . the Flywheel Defendants agree that no post-production expenses shall be taken in the future from the excess royalty payments (royalty payments exceeding the first one-eighth portion of royalty, if any) made by Flywheel Production, if any, to the specific Plaintiffs listed in Exhibit C pursuant to the oil and gas leases listed on Exhibit C, and no other.

> . . .

> Notwithstanding anything in this Settlement Agreement to the contrary, the specific Plaintiffs listed on Exhibit C, and only those specific Plaintiffs, shall reserve to

---

[24] *Beck Case Docket* (Doc. 98).

themselves any right they may have to dispute, make a claim for, or commence litigation against the Flywheel Defendants with regard to, and only with regard to, the propriety of post-production expense deductions from the statutory (first one-eighth) royalty payments distributed to those specific Plaintiffs by Flywheel . . . . Reserved Claims are limited only to claims arising from those statutory (first one-eighth) royalty payments made in connection with production that has occurred on or after the Release Date specified in this Settlement Agreement.

Mr. Oliger has refused to sign this agreement because of these provisions. Specifically, he does not want to agree that Flywheel's manner of calculating royalty payments is acceptable going forward.[25] Mr. Oliger testified that he is also concerned that, were he to sign the settlement agreement, he would be unable to pursue his "gross proceeds" claims against Flywheel. This point of contention is primarily due to the provision that any claims about deductions from the first 1/8 royalty that arose prior to the Release Date would be forfeited.

Mr. Oliger testified that he informed Barton and Burrows attorney Seth Jones that he would rather forego the settlement money and continue with the case against Flywheel.[26] Mr. Oliger testified that he was told that Barton and Burrows had gone above its spending limit for the case and that it was time to settle.[27] Mr. Oliger also testified that Barton and Burrows attorney George Barton told him that if Mr. Oliger did not sign the settlement agreement, Mr. Barton "would let a judge settle it."[28] Mr. Oliger testified that he told Mr. Barton "just go ahead and do what you have

---

[25] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 75–76.

[26] *Id.* at 70. Mr. Oliger's testimony here somewhat conflicts with his testimony that he did not think Barton and Burrows was representing him on a "gross proceeds" claim against Flywheel in *Beck* at all. It is likely that Mr. Oliger meant he would rather forego the *Beck* settlement money so that he can continue pursuing the instant *Oliger* lawsuit which had already been filed at that time.

[27] *Id.*

[28] *Id.* at 76.

to do, and I'll do what I have to do."[29]   Mr. Oliger said that he felt as though Mr. Barton "was

trying to intimidate" him into signing the settlement agreement.[30]

## B.  The Backstory of the *Bryant* Case

Sometime in August 2020, Mr. Bryant reached out to Barton and Burrows about

Flywheel's deductions from his "gross proceeds" lease.[31]   Mr. Bryant signed an attorney-client

agreement with Barton and Burrows on August 21, 2020.[32]   The agreement specifically states that

Barton and Burrows will file a class action complaint against Flywheel with Mr. Bryant as a named

plaintiff.[33]   The *Bryant* Complaint was filed in Arkansas state court on August 28, 2020, and

Flywheel removed the case on September 25, 2020.[34]   Mr. Bryant never reviewed that Complaint.

He testified that he did not even know a lawsuit had actually been filed under his name until around

one year later.[35]

The attorney-client relationship between Mr. Bryant and Barton and Burrows broke down

after Mr. Bryant learned about the proposed *Beck* settlement.  Mr. Bryant is not a party in *Beck*,

but his sister is.  Mr. Bryant is also a neighbor and long-time acquaintance of Mr. Oliger.[36]   Mr.

Bryant testified that he "gathered enough from [his] sister and Darrell Oliger" to learn that the

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at 24–25.

[32] *Id.* at 25; *see also Oliger Case Docket* (Doc. 53-1) (providing a copy of Mr. Bryant's signed agreement). The attorney-client agreement is dated August 20, 2021, but Mr. Bryant did not return it signed until the next day.  Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 25–26.  The attorney-client agreement is between Mr. Bryant and the Law Offices of George A. Barton, P.C.  Barton and Burrows is the successor to the Law Offices of George A. Barton.  The law firm changed its name after Stacy Burrows became a partner in the firm.

[33] *Oliger Case Docket* (Doc. 53-1).

[34] Case No. 4:20-cv-01147-LPR (Doc. 1) [hereinafter *Bryant Case Docket*].

[35] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 45–46 (Mr. Bryant stating that he saw the *Bryant* Complaint for the first time after the August 25, 2021 hearing on the instant Motions).

[36] *Id.* at 33 (Mr. Bryant stating he has known Mr. Oliger his whole life); *id.* at 53 (Mr. Oliger stating that he and Mr. Bryant are neighbors).

*Beck* settlement "was not in anybody's best interest."[37]  Mr. Bryant considered the *Beck* settlement to be "all for Flywheel," and considered anyone who signed it as "being thrown under the bus."[38]

Once Mr. Bryant learned about the *Beck* settlement, he decided that Barton and Burrows "was not going to work in [his] best interest."[39]  In January 2021, Mr. Bryant spoke with Barton and Burrows attorney Seth Jones.  Mr. Bryant testified that he told Mr. Jones that he no longer wanted to work with Barton and Burrows and asked that the firm no longer contact him.[40]  Mr. Jones recalled Mr. Bryant "express[ing] some concerns" about the *Beck* settlement.[41]  Mr. Jones testified that he "thought [Mr. Bryant and Barton and Burrows] were good, and [that they] were on the same page moving forward" after the January 2021 conversation.[42]  Mr. Bryant and Mr. Jones spoke again in April 2021 when Mr. Jones requested paperwork from Mr. Bryant.[43]  Mr. Bryant testified that he "made it clear for [Barton and Burrows] to never call" Mr. Bryant again.[44]  Undeterred, Barton and Burrows continued to prosecute the *Bryant* lawsuit in Mr. Bryant's name.

---

[37] *Id.* at 17 (cleaned up).

[38] *Id.* at 17, 31.

[39] *Id.* at 17.

[40] *Id.* at 19–20.

[41] *Id.* at 83.

[42] *Id.*

[43] *Id.* at 46.  Mr. Jones has no recollection of the April 2021 phone call.  *Id.* at 84.  Mr. Jones did not testify that it never happened.  Mr. Bryant was quite sure that it happened.  Mr. Oliger also recalled Mr. Bryant telling him about the April 2021 conversation between Mr. Bryant and Barton and Burrows.  *Id.* at 53.  The Court finds that the April 2021 conversation between Mr. Bryant and Barton and Burrows did occur as Mr. Bryant described it.  In addition to Mr. Oliger's and Mr. Bryant's testimony, Barton and Burrows's contemporaneous signing of another named plaintiff, Mr. Barnes, in April 2021, and the equivocation on why Barton and Burrows signed Mr. Barnes, indicates that something of consequence happened in April 2021.  *See id.* at 88 (Mr. Jones stating that Mr. Barnes was signed on as named plaintiff in case "we do need [Mr. Barnes]" or "if we do want to add [Mr. Barnes] as a party after this [*Beck*] settlement agreement is finished up"); *id.* at 121–22 (Ms. Burrows claiming that Barton and Burrows always intended to add Mr. Barnes to the case).  Mr. Barnes's role as a potential named plaintiff is discussed *infra* Section I.D.

[44] *Id.* at 21.

## C.  Interim Class Counsel Motions

On July 30, 2021, the Court consolidated the *Oliger* and *Bryant* lawsuits "for all purposes except trial."[45]  The Court decided to "treat the named Plaintiffs in each of these cases as co-plaintiffs" and designate "interim counsel for the putative class."[46]  The Plaintiffs filed the instant (dueling) Motions for Appointment as Interim Counsel, and the Court held a hearing on August 25, 2021.[47]  Each set of attorneys argued that Rule 23(g) favored appointing them as interim class counsel.[48]  Unusually, this was not the last shoe to drop.

Mr. Oliger was present at the August 2021 hearing.  Mr. Bryant was not.  Immediately after the hearing, and unbeknownst to Thrash/Morgan or Barton and Burrows, Mr. Oliger visited with Mr. Bryant and asked why Mr. Bryant had not attended the hearing.[49]  Mr. Bryant responded that he did not know a hearing had taken place.[50]  Mr. Oliger caught Mr. Bryant up on the hearing.[51]  Mr. Bryant told Mr. Oliger that he had already broken off from Barton and Burrows.[52]  Mr. Bryant then offered to call Thrash/Morgan and clarify that he was not being represented by Barton and

---

[45] Consolidation Order, *Oliger Case Docket* (Doc. 44) at 2.

[46] *Id.*

[47] *See Oliger Case Docket* (Doc. 45) (Thrash/Morgan Motion); *id.* (Doc. 48) (Barton and Burrows Motion); *id.* (Doc. 51) (Clerk's Minutes of August 25, 2021 hearing).

[48] Thrash/Morgan argued that Barton and Burrows's endorsement of the *Beck* settlement created a conflict of interest between Barton and Burrows and members of the *Oliger/Bryant* classes because the *Beck* settlement relinquished otherwise valid claims against Flywheel.  *See* Aug. 25, 2021 Hr'g Tr. at 16; *Oliger Case Docket* (Doc. 46) at 6–7. Barton and Burrows argued that Mr. Oliger's "gross proceeds" claims against Flywheel were already being prosecuted in *Beck*.  *See Oliger Case Docket* (Doc. 49) at 15.

[49] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 52. Recall that Mr. Oliger and Mr. Bryant are neighbors and life-long acquaintances.  *See supra* note 36.  There is no indication that Mr. Oliger's visit to Mr. Bryant was insidious.

[50] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 52.

[51] *Id.* at 52–53.

[52] *Id.* at 53.

11

Burrows.[53]  Mr. Oliger gave Mr. Bryant the number for the Morgan Law Firm, but Mr. Bryant was

unable to reach anyone.[54]  The next morning, on August 26, Mr. Bryant left a voicemail with the

Morgan Law Firm, stating that he had twice told Barton and Burrows not to contact him, and that

Barton and Burrows was not representing him.[55]  Mr. Oliger was not present when Mr. Bryant left

the voicemail with the Morgan Law Firm.[56]  Mr. Bryant's voicemail was shared with the Court on

August 31, 2021.[57]  No attorney from Thrash/Morgan ever contacted Mr. Bryant after receiving

the August 26 voicemail.[58]

**D.  Motion to Substitute Harrol Barnes as New Named Plaintiff**

In light of Mr. Bryant's August 26 voicemail, the Court scheduled a supplemental hearing

for December 17, 2021.  Just four days before the hearing, on December 13, 2021, Barton and

Burrows filed a Motion for Leave to File an Amended Class Action Complaint and to Substitute

Putative Class Representative.[59]  In that Motion, Barton and Burrows said that "Mr. Bryant has

become non-responsive and indicated to [Barton and Burrows] that he no longer desires to be

appointed as the class representative."[60]  Barton and Burrows requested that Mr. Bryant be dropped

---

[53] Mr. Bryant and Mr. Oliger both testified (outside the presence of each other) that it was Mr. Bryant's idea to contact Thrash/Morgan.  *Id.* at 12, 53.

[54] *Id.* at 13–14, 54.

[55] *Oliger Case Docket* (Doc. 52-1) at 3 (providing transcript of the August 26, 2021 voicemail).

[56] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 55.

[57] *Oliger Case Docket* (Doc. 52).

[58] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 22.

[59] *Oliger Case Docket* (Doc. 57).

[60] *Id.* at 3.  Mr. Bryant's testimony does not entirely support this statement.  He did testify that he no longer wishes to be represented by Barton and Burrows, but he did not tell the Court that he no longer wishes to be a class representative.  *See* Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 23–24.

from the *Bryant* lawsuit and replaced with Harrol Barnes as the new class representative.[61]   Mr. Barnes's role in these cases is, unsurprisingly, complicated.

Mr. Barnes is similar to Mr. Oliger in many respects.  Mr. Barnes signed on with Barton and Burrows on August 4, 2015, to pursue royalty underpayment claims against SEECO, Inc.[62]   In September 2015, Mr. Barnes was named as a plaintiff in the *Bell* case that was later consolidated with *Beck*.[63]   On March 30, 2020, Mr. Barnes was listed as a plaintiff in the (currently operative) Third Amended Complaint in *Beck*.[64]   That Complaint identifies Mr. Barnes as holding a "prohibits deduction" (also called "gross proceeds") style lease with SEECO (now Flywheel).[65]

On September 28, 2020, Mr. Barnes entered into an attorney-client agreement with the Morgan Law Firm.  The agreement states that Mr. Barnes will be represented by the Morgan Law Firm in Mr. Barnes's claim against "Flywheel Energy/Merit Energy or related leaseholders . . . relating to gross proceeds leases."[66]   According to Nathan Morgan of the Morgan Law Firm, Mr. Barnes initiated this attorney-client relationship.[67]   Mr. Morgan said that he discussed with Mr. Barnes whether he was already represented on these claims.[68]   Specifically, Mr. Morgan's conversation with Mr. Barnes covered Mr. Barnes's involvement in the *Beck* litigation.[69]

---

[61] *Oliger Case Docket* (Doc. 57) at 1.

[62] A copy of Mr. Barnes's 2015 agreement with Barton and Burrows was provided to the Court during the Dec. 17, 2021 hearing.  The attorney-client agreement is between Mr. Barnes and the Law Offices of George A. Barton, P.C.  Barton and Burrows is the successor to the Law Offices of George A. Barton.  The law firm changed its name after Stacy Burrows became a partner in the firm.

[63] *Bell v. Desoto Gathering Company LLC*, No. 4:15-cv-00628-BSM (E.D. Ark.) (Docs. 2, 39).

[64] *Beck Case Docket* (Doc. 51) ¶ 143.

[65] *Id.*

[66] A copy of Mr. Barnes's 2020 agreement with the Morgan Law Firm was provided to the Court during the Dec. 17, 2021 hearing.

[67] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 140.

[68] *Id.* at 140–41.

[69] *Id.*

Thrash/Morgan concluded, as they did with Mr. Oliger, that Mr. Barnes's gross proceeds claims against Flywheel were not being litigated in *Beck*, and therefore Thrash/Morgan could represent Mr. Barnes.[70]

Fast forward to April 2021.  At that time, Barton and Burrows was collecting signatures for the *Beck* settlement with Flywheel.  Mr. Oliger would not sign it.  Mr. Bryant (although he is not a party in *Beck*) was upset about the settlement and had twice told Barton and Burrows not to contact him anymore.  On April 7, 2021, Mr. Barnes met with Barton and Burrows and signed two documents.  One document was an acceptance form for the *Beck* settlement.[71]  The second document was a new attorney-client agreement expressly stating that Mr. Barnes will be a named plaintiff in a class action lawsuit against Flywheel.[72]  Barton and Burrows maintains that the April 2021 agreement with Mr. Barnes in no way stems from Mr. Bryant's twice-expressed desire to no longer work with Barton and Burrows, despite the highly-coincidental timing.  But Barton and Burrows has not otherwise given a clear explanation of why it asked Mr. Barnes to sign a new agreement in 2021 since it already had an agreement with Mr. Barnes from 2015.

Barton and Burrows said that its original 2015 agreement with Mr. Barnes would have been sufficient to cover its representation of him as a named plaintiff in the instant (potential) class action case.[73]  Barton and Burrows attorney Stacy Burrows said that Mr. Barnes was asked to sign the additional agreement because it expressly covers Mr. Barnes being named as a class representative and explains that in class action cases the Court determines the attorneys' fees to be

---

[70] *Id.*

[71] *Id.* at 112.

[72] A copy of Mr. Barnes's April 7, 2021 agreement with Barton and Burrows was provided to the Court during the Dec. 17, 2021 hearing.

[73] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 117–20.

14

paid.[74]  Barton and Burrows attorney Seth Jones, on the other hand, said that he had Mr. Barnes

sign the 2021 agreement because Mr. Barnes was interested in pursuing his reserved claims from

the *Beck* settlement.  Mr. Jones's testimony was that they did not know if Barton and Burrows

would need or want to add Mr. Barnes as a named plaintiff, but that it seemed wise to sign him up

just in case.[75]  Ms. Burrows said that Barton and Burrows's intention was always to add Mr. Barnes

as a named plaintiff in the *Bryant* action.[76]

 Whatever the reasons for the new agreement with Mr. Barnes may have been, nothing came

of it until December 13, 2021, when Barton and Burrows sought leave to amend the *Bryant*

Complaint and replace Mr. Bryant with Mr. Barnes as the putative class representative.[77]  Barton

and Burrows explained that the delay from April to December was due to Mr. Barnes still being a

party in *Beck*.  Barton and Burrows was waiting for the Flywheel settlement to be finalized in *Beck*

so that Mr. Barnes could then pursue the reserved claims from that settlement agreement.[78]

 The attempt to substitute Mr. Barnes for Mr. Bryant came as quite the surprise to

Thrash/Morgan, considering the Morgan Law Firm had entered into an attorney-client agreement

with Mr. Barnes for these claims over a year ago.[79]  After reviewing the Motion to Amend, the

Thrash/Morgan attorneys conferred with each other about what to do next.  They concluded that

they had a right (in their view, an obligation) to contact Mr. Barnes and figure out what was going

---

[74] *Id.*

[75] *Id.* at 88 (Mr. Jones recalling that he told Mr. Barnes "if we do need you, we have a class action complaint on file, but if we do want to add you as a party after this settlement agreement is finished up, let's go ahead and just execute a class action fee agreement and get that on file, so we can go ahead and move accordingly").

[76] *Id.* at 122.

[77] *Oliger Case Docket* (Doc. 57).

[78] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 120–21.

[79] Thrash/Morgan had no knowledge of Mr. Barnes's 2015 agreement with Barton and Burrows.  *Id.* at 144.  As discussed earlier, Thrash/Morgan did know Mr. Barnes was a plaintiff in *Beck* but did not consider the claims in *Beck* to be the same as the claims covered by the Morgan Law Firm's 2020 agreement with Mr. Barnes.  *See supra* notes 66–70 and accompanying text.

on between Mr. Barnes and Barton and Burrows.[80]   The record is less than clear on exactly what happened next.

It seems that Nathan Morgan of the Morgan Law Firm reached out to Mr. Barnes and asked if Mr. Morgan could visit Mr. Barnes's home the next morning.[81]   Mr. Barnes then left a voicemail with Barton and Burrows attorney Seth Jones to let Mr. Jones know about the upcoming visit from Mr. Morgan.[82]   The next morning, Mr. Morgan visited Mr. Barnes's home.   Mr. Jones did not have any substantive information about the conversation between Mr. Morgan and Mr. Barnes.[83]   Mr. Morgan described the conversation as him simply seeking to learn more about Mr. Barnes's relationship with Barton and Burrows.   According to Mr. Morgan, he essentially told Mr. Barnes that Mr. Barnes would need to choose between Thrash/Morgan or Barton and Burrows since he had signed agreements with both.[84]   During the December 17, 2021 hearing on these Motions, Barton and Burrows all but conceded that Mr. Barnes no longer cares to push Barton and Burrows

---

[80] Dec. 17, 2021 Hr'g Tr., *Oliger Case Docket* (Doc. 60) at 145.

[81] Mr. Jones testified that Mr. Morgan called and left a voicemail for Mr. Barnes.  *Id.* at 92–93.  Mr. Morgan said that he spoke briefly with Mr. Barnes on the phone, and then sent him a text message with Mr. Morgan's phone number.  *Id.* at 160–61.  The Court asked repeatedly throughout the hearing for Mr. Jones to procure the voicemail (if there actually was one).  Mr. Jones later conceded that it could have been a text message, not a voicemail, from Mr. Morgan to Mr. Barnes.  *Id.* at 161.

[82] *Id.* at 92.  Mr. Jones's testimony indicated that Mr. Barnes was frightened, upset, and confused by Mr. Morgan's request to visit him.  Mr. Jones also said that Mr. Barnes "didn't have any independent knowledge of the Morgan Firm . . . ."  *Id.* at 94.  Considering the 2020 agreement between Mr. Barnes and the Morgan Law Firm, Mr. Morgan's recollection of his conversations with Mr. Barnes, and the fact that Mr. Jones never produced any voicemail (despite the Court's repeated requests during the hearing) or any other evidence, the Court does not find Mr. Jones's characterization of Mr. Barnes's reaction to Mr. Morgan to be compelling.

[83] *Id.* at 95 (Mr. Jones stating that "Mr. Barnes told me that, quote 'Mr. Morgan said something'").

[84] *Id.* at 143–44.

16

as interim class counsel.[85]  Barton and Burrows also said that it does not currently have an attorney-client agreement with anyone else to serve as a class representative.[86]

## II. DISCUSSION

Federal Rule of Civil Procedure 23(g) requires appointment of class counsel when a class action is certified.  Right now, there is no certified class.  Rule 23 goes on to say, however, that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."[87]  When the Court consolidated the *Oliger* and *Bryant* cases, it determined that it would exercise its discretion and appoint interim class counsel for the putative class that emerged from the consolidation.[88]

Rule 23 provides a roadmap for appointing counsel once a class action is certified.[89]  While the Court is only appointing interim class counsel at this stage, most courts follow the same steps regardless of whether it is an interim or a post-certification appointment.[90]  The Court must determine that the applicant is "adequate" under Rule 23(g)(1)(A).  To determine counsel's adequacy, the Court is required to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and

---

[85] *Id.* at 154 (Ms. Burrows describing Mr. Barnes as "shaken" and not wanting "to be involved in whatever stuff you guys have going on that somebody is going to show up at my house at 9:30 in the morning").  *But see id.* at 97 (Mr. Jones stating that Mr. Barnes "has still expressed his desire to be a named plaintiff and a class representative").

[86] *Id.* at 155.

[87] Fed. R. Civ. P. 23(g)(3).

[88] Consolidation Order, *Oliger Case Docket* (Doc. 44) at 2.

[89] Fed. R. Civ. P. 23(g)(1)–(2).

[90] *See, e.g.*, *Klug v. Watts Regul. Co.*, No. 8:15-cv-61, 2015 WL 13893248, at *2 (E.D. Mo. July 31, 2015) (collecting cases).

(iv) the resources that counsel will commit to representing the class.[91]

Once adequacy has been established under the foregoing factors, the applicant is eligible for appointment.[92]  But just because an applicant is "adequate" does not mean appointment is appropriate.  Rule 23 tells the Court that it "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[93]  And in situations like this, where there are two competing applicants, the Court "must appoint the applicant best able to represent the interests of the class."[94]

The Court is satisfied that both Thrash/Morgan and Barton and Burrows are "adequate" under Rule 23(g)(1)(A).[95]  So, how does the Court determine which set of lawyers is "best able to represent the interests of the class"?  Rule 23 does not say.  There is no Eighth Circuit precedent stating how to decide which applicant is "best."  The same is true for other circuit courts, aside from affirming appointments on an abuse-of-discretion standard.[96]  Fellow district courts have given "varying reasons as to why a particular applicant is 'best' among multiple [adequate] applicants . . . ."[97]  While the specific reasons may vary on a case-by-case basis, the mode of

---

[91] Fed. R. Civ. P. 23(g)(1)(A).

[92] Fed. R. Civ. P. 23(g)(2).

[93] Fed. R. Civ. P. 23(g)(1)(B).

[94] Fed. R. Civ. P. 23(g)(2).

[95] While it is not particularly relevant for the Court's analysis, Flywheel's counsel agreed that Thrash/Morgan and Barton and Burrows are both adequate under Rule 23(g).  Aug. 25, 2021 Hr'g Tr. at 31.

[96] *See Radcliffe v. Hernandez*, 818 F.3d 537, 549 (9th Cir. 2016) (rejecting the argument that district court abused its discretion when it found that a law firm which had "created a significant conflict of interest between themselves, their clients, and the rest of the class," was nevertheless the "best able" to represent the class because "district courts must have the discretion to address attorney representation and disqualification issues based on the details of each case"); *Cullen v. New York State Civ. Serv. Comm'n*, 566 F.2d 846, 849 (2d Cir. 1977) ("Unless there are exceptional circumstances, not present here, the exercise of discretion should be left untouched by the appellate court.  To hold otherwise would open a Pandora's box of appeals whenever a district court . . . selects the counsel best able to represent class members.").

[97] 1 *Newberg on Class Actions* § 3:81 (5th ed. Dec. 2021 Update).

analysis does not.  District courts regularly choose the "best" applicant by weighing the four mandatory factors in Rule 23(g)(1)(A) and deciding that one or more of those factors lean more heavily in favor of one applicant.[98]

That approach makes sense in most cases.  But this case is not like most cases.  The Court cannot merely balance the adequacy factors and call it a day.  Doing so would not provide a full and clear picture of which applicant is "best" in this case.  The Court finds it necessary to take Rule 23(g)(1)(B)'s further step of considering "other matter[s] pertinent to counsel's ability to fairly and adequately represent the interests of the class."

### A.  Balancing the Rule 23(g)(1)(A) Factors

The first factor is "the work counsel has done in identifying or investigating potential claims in the action."[99]  Thrash/Morgan notes that the *Oliger* action was filed before the *Bryant* action and that Thrash/Morgan has "performed substantial work" investigating and identifying claims "for over a year."[100]  The "substantial work" includes "an extensive investigation into Flywheel's business practices," reviewing "thousands of pages of discovery," and identifying "common royalty terms which require the payment of gross proceeds."[101]  Barton and Burrows questions the efficacy of Thrash/Morgan's investigation, given that Thrash/Morgan has "found it necessary to amend their class action complaint three times this early in the proceedings."[102]

---

[98] *See, e.g.*, *Adedipe v. U.S. Bank, Nat. Ass'n*, Nos. 13-2687, 13-2944, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (finding that both applicants were adequate, then selecting the applicant who "devoted the more substantial effort toward pre-suit investigation and identification of claims"); *Crocker v. KV Pharm. Co.*, Nos. 4:09-cv-198, 4:09-cv-222, 4:09-cv-297, 2009 WL 1297684, at *3 (E.D. Mo. May 7, 2009) (selecting the "best" applicant by determining that "the balance of the four Rule 23(g)(1)(A) factors weigh in favor of" that applicant); 1 *Newberg on Class Actions* § 3:81 n.6 (5th ed. Dec. 2021 Update) (collecting cases).

[99] Fed. R. Civ. P. 23(g)(1)(A)(i).

[100] *Oliger Case Docket* (Doc. 46) at 7.

[101] *Id.*

[102] *Oliger Case Docket* (Doc. 49) at 10.

Barton and Burrows says the fact that *Bryant* was filed only four days later than *Oliger* should not make a significant difference for either applicant.[103]  Barton and Burrows also implies that much of Thrash/Morgan's work thus far has essentially come from piggybacking on Barton and Burrows's efforts.[104]  Additionally, Barton and Burrows notes that it had prepared and negotiated a Rule 30(b)(6) deposition with Flywheel.[105]

The Court finds that the first factor just barely favors Barton and Burrows.  Thus far, Barton and Burrows has been advancing more efficiently through discovery.  Additionally, the Court finds it relevant that Barton and Burrows did not need to amend the *Bryant* Complaint several times in such a short period.

The second and third factors are closely related.  The second factor is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action."[106]  The third factor is "counsel's knowledge of the applicable law."[107]  Thrash/Morgan (primarily the Thrash Law Firm) has "almost 40 years of experience" with complex litigation and class action lawsuits.[108]  That experience includes class action or other complex lawsuits concerning breach of contract, consumer fraud, deceptive business practices, and fair debt collection cases "on behalf of Arkansas consumers and consumers nationwide."[109]  The Morgan Law Firm brings "almost 40 years" of experience in oil and gas litigation and complex civil

---

[103] Aug. 25, 2021 Hr'g Tr. at 20.

[104] *Id.* at 27–28 (Barton and Burrows attorney Stacy Burrows arguing the discovery reviewed by Thrash/Morgan was produced "because of my firm"); *Oliger Case Docket* (Doc. 49) at 10 (stating that Thrash/Morgan "submitted an Agreed Upon Protective Order" that was "nearly identical" to one originally prepared by Barton and Burrows in the *Bryant* action); *id.* at 11 (stating that Barton and Burrows has "not taken a back seat in this litigation").

[105] *Oliger Case Docket* (Doc. 49) at 10.

[106] Fed. R. Civ. P. 23(g)(1)(A)(ii).

[107] Fed. R. Civ. P. 23(g)(1)(A)(iii).

[108] *Oliger Case Docket* (Doc. 46) at 8.

[109] *Id.* at 8–10.

litigation to the table.[110]  One attorney with the Morgan Law Firm also has two years of "in-house" experience working in the Arkansas gas industry.[111]

Barton and Burrows notes that Mr. Barton has "been designated lead counsel in over 30 class actions" nationwide and in "the vast majority" of those cases, Mr. Barton "acted as lead or co-lead counsel."[112]  Additionally, Barton and Burrows has "acted as lead counsel or co-lead counsel in numerous similar class action and non-class action royalty underpayment cases."[113] Due to its "track record of successfully prosecuting royalty underpayment class action cases," Barton and Burrows is "regularly asked to speak at industry events specifically related to . . . natural gas royalty underpayment litigation."[114]

The Court finds that both the second and third Rule 23(g)(1)(A) factors just barely favor Barton and Burrows.  Barton and Burrows seems to have more experience leading class action litigation.  Additionally, Barton and Burrows seems to be more familiar with the specific type of royalty underpayment claims at issue in this litigation.

The fourth factor is "the resources that counsel will commit to representing the class."[115] Thrash/Morgan does not provide much in the way of specifics on this point.  Thrash/Morgan argued that there is a rebuttable presumption that potential counsel has sufficient resources and that there had been no evidence presented to rebut the presumption.[116]  When Barton and Burrows raised the prospect of extensive discovery stretching the Thrash/Morgan's resources (a total of

---

[110] *Id.* at 10.

[111] *Oliger Case Docket* (Doc. 45-7).

[112] *Oliger Case Docket* (Doc. 49) at 11.

[113] *Id.* at 12.

[114] *Id.* at 13.

[115] Fed. R. Civ. P. 13(g)(1)(A)(iv).

[116] Aug. 25, 2021 Hr'g Tr. at 14.

four attorneys) too thin, Thrash/Morgan simply said document dumps are routine and that Thrash/Morgan is capable of handling them.[117]

Barton and Burrows, which only has one more attorney to dedicate to the case than Thrash/Morgan, claims it has more abundant resources and will be able to utilize those resources more efficiently.[118]  These supposed efficiencies come from the fact that Barton and Burrows is one firm with a settled organizational structure.  Appointing two firms, Barton and Burrows says, would "lead to unnecessary and duplicative work, and needlessly increase attorneys' fees and expenses for the proposed class."[119]  Moreover, Barton and Burrows contends that Thrash/Morgan is susceptible to additional inefficiencies because "[Thrash/Morgan] lack[s] any requisite experience in litigation [of] royalty underpayment class cases . . . ."[120]

The Court finds this to be a closer call than Barton and Burrows makes it out to be.  Nevertheless, Barton and Burrows's experience in this area could result in a slightly more efficient prosecution of the claims.  The Court also finds it relevant that Barton and Burrows is one firm with a settled organizational structure.  Thus, the Court finds this factor to just barely favor Barton and Burrows.

## B.  Additional Rule 23(g)(1)(B) Considerations

Were the Court to stop its analysis here, Barton and Burrows would have the slightest of edges.  But the Court has significant concerns about Barton and Burrows's "ability to fairly and adequately represent the interests of the class" that outweigh the firm's slight edge.[121]

---

[117] *Id.* at 32.

[118] *Oliger Case Docket* (Doc. 49) at 14.

[119] *Id.*

[120] *Id.*

[121] Fed. R. Civ. P. 23(g)(1)(B).

Barton and Burrows has displayed a concerning inability to effectively communicate with its clients and the Court.  As to the Court, Barton and Burrows filed the *Bryant* Complaint without having Mr. Bryant review or approve it.  Later, Barton and Burrows filed a Motion and appeared in Court seeking to be appointed interim class counsel despite Mr. Bryant (the sole named plaintiff in *Bryant*) telling Barton and Burrows on two separate occasions (long before the Motion was filed) that he did not want to be involved with the firm anymore.  Barton and Burrows did not reveal this information to the Court in a timely manner, which was at best misleading.[122]

Most concerning, however, is Barton and Burrows's inability to communicate with its clients.  Both Mr. Oliger and Mr. Bryant were furious about the proposed settlement that Barton and Burrows brokered in *Beck*.  Mr. Oliger testified that he felt as though a Barton and Burrows attorney was trying to intimidate him into signing an agreement he did not want to sign.  Mr. Bryant saw it as Barton and Burrows throwing clients under the bus.  Barton and Burrows maintains that the settlement agreement does not impair Mr. Oliger's or Mr. Bryant's interests. The Court takes no position on that—because it is beside the point.  The Court is concerned by the fact that Barton and Burrows's response to Mr. Oliger's and Mr. Bryant's frustration is to simply say that the two men are confused about what the settlement means.  It is Barton and Burrows's job to make sure its clients are not confused.  Effectively communicating with clients is a critical function of an attorney.  Communication with clients is especially important in class action lawsuits, where the named plaintiffs must protect the unnamed plaintiffs' interests.  If Barton and

---

[122] The record also strongly indicates that, immediately after Mr. Bryant's second rebuke in April 2021, Barton and Burrows signed an agreement with Mr. Barnes so that Mr. Barnes could replace Mr. Bryant as class counsel.  It appears that Barton and Burrows had to bide its time with Mr. Bryant's name still on the *Bryant* Complaint until the *Beck* settlement with Flywheel is finalized.  Until then, Mr. Barnes is in the same position as Mr. Oliger with respect to the *Beck* litigation, and Barton and Burrows had already argued that Mr. Oliger was an inappropriate Plaintiff in the instant *Oliger* suit because of his position in *Beck*.  Barton and Burrows lost its own waiting game because Mr. Oliger has refused to sign the *Beck* settlement.  Time ran out when Mr. Bryant left the August 26 voicemail with the Morgan Law Firm.

Burrows cannot cure the named Plaintiff's confusion, then every class member's interest is jeopardized.

Finally, it appears that Barton and Burrows has no remaining options for a class representative. Mr. Bryant very clearly does not want to be represented by Barton and Burrows. There is a pending Motion to Amend the *Bryant* Complaint and substitute Mr. Barnes as the named Plaintiff. But, during the December 17 hearing, Barton and Burrows all but conceded that Mr. Barnes no longer cares to push to have Barton and Burrows appointed as interim counsel. Barton and Burrows said it does not currently have an attorney-client agreement with anyone else who could serve as a class representative. These significant concerns about Barton and Burrows overcome the very small advantage the firm has under the Rule 23(g)(1)(A) factors. Thrash/Morgan is therefore the applicant that is "best able to represent the interests of the class."[123]

---

[123] Fed. R. Civ. P. 23(g)(2). To be fair, Thrash/Morgan brings its own issues to the table. First, Barton and Burrows contends that Thrash/Morgan acted unethically when it engaged two different clients—Mr. Oliger and Mr. Barnes—that were already being represented by Barton and Burrows in *Beck*. Arkansas Rule of Professional Conduct 4.2 covers communications by a lawyer with a person that the lawyer knows is already represented by counsel in a legal matter. The fact that both Mr. Oliger and Mr. Barnes initiated their attorney-client relationships with Thrash/Morgan may be relevant to any ethical concerns, but it is certainly not dispositive. *See* Ark. R. Prof. Conduct 4.2 cmt. 3 (stating that the prohibition against communication with a person represented by counsel "applies even though the represented person initiates or consents to the communication"). Rule 4.2 states that a lawyer's knowledge can be "inferred from the circumstances." Ark. R. Prof. Conduct 4.2 cmt. 8. But the facts in this record do not allow for a definitive inference. Thrash/Morgan stated that, after its review of the *Beck* action, it was satisfied that Mr. Oliger was not currently represented on the claims asserted in the instant *Oliger* lawsuit. That question is not before the Court, *see supra* note 15, and therefore I cannot definitively say Thrash/Morgan was wrong. The same logic applies to Thrash/Morgan's initial communications with Mr. Barnes. I am not prepared to definitively say any Thrash/Morgan attorney violated any ethical rules by engaging Mr. Oliger or Mr. Barnes.

Barton and Burrows was also concerned by Thrash/Morgan's direct contact with Mr. Barnes after Barton and Burrows filed the Motion to Amend and substitute Mr. Barnes as the new putative class representative in the *Bryant* lawsuit. It is true that Thrash/Morgan and Mr. Barnes had an existing attorney-client agreement. Still, after all of the accusations of client-poaching in this case, there were likely better options for Thrash/Morgan to explore. *See* Ark. R. Prof. Conduct 4.2 cmt. 6 ("A lawyer who is uncertain whether a communication with a represented person is permissible may seek a court order."). But better options are not required options. Given all of the confusion among the parties and attorneys in these cases, I cannot definitively say that any Thrash/Morgan attorney acted unethically.

In any event, the Thrash/Morgan attorneys' actions are not the kind that give the Court concern about their ability to represent the interests of the class. Thus, when balanced against Barton and Burrows's actions—which involved potentially misleading statements to the Court and poor client communications—the Court finds that Thrash/Morgan is the applicant "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). No third option presents itself.

**CONCLUSION**

The Oliger Plaintiffs' Motion to Appoint Interim Class Counsel is GRANTED.[124]   The Thrash Law Firm and the Morgan Law Firm are hereby designated interim class counsel.

Mr. Bryant's Motion to Appoint Interim Class Counsel is DENIED.[125]   The Oliger Plaintiffs' Motion to Supplement the Record of the Rule 23(g) Conference is GRANTED.[126]  Mr. Bryant's Motion for Leave to File an Amended Class Action Complaint and to Substitute Putative Class Representative is DENIED.[127]

IT IS SO ORDERED this 20th day of January 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[124] *Oliger Case Docket* (Doc. 45).

[125] *Oliger Case Docket* (Doc. 48).

[126] *Oliger Case Docket* (Doc. 52).

[127] *Oliger Case Docket* (Doc. 57).

25